Filed 3/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B257222 |
| Petitioner, | (Los Angeles County Super. Ct. Nos. BC460794, BC460797, BC460799, BC463707, BC463709, BC467194, BC467195, BC467881, BC471859, BC473512, BC473561, BC473562, BC473563, BC474278, BC476226, BC476227, BC476735, BC476736, BC476737, BC476738, BC478007, BC478008, BC478009, BC478239, BC478241, BC478242, BC78244) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CAHUENGA'S THE SPOT et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. John Shepard Wiley, Jr., Judge. Petition granted.

Michael N. Feuer, City Attorney, Asha Greenberg, Deputy Assistant City Attorney, and Anh Truong, Deputy City Attorney, for Petitioner.

No appearance for Respondent.

Roger Jon Diamond for Real Party in Interest Alan Edward Broder.

Rosenthal & Associates, Lisa F. Rosenthal for Real Party in Interest Michael Braum et al.

Stanley H. Kimmel for Real Party in Interest Our Elco.

Panitz & Kossoff, LLP, Kenneth W. Kossoff for Real Party in Interest George M. Paulsin.

INTRODUCTION

In 2011 and 2012, the People of the State of California, acting by and through the City Attorney of the City of Los Angeles (the People), brought enforcement actions against more than 80 operators and owners of facilities alleged to be selling and distributing marijuana for medicinal purposes in violation of the Los Angeles Municipal Code, the California Health and Safety Code and the state unfair competition law. As remedies for the defendants' conduct, the People sought abatement of continuing public nuisances, permanent injunctions and civil penalties.

The trial court denied the People's omnibus motion for summary judgment and, in the alternative, summary adjudication, ruling the People had failed to present evidence and argument to support their claims for civil penalties. The trial court based its ruling on its view that claims for penalties made under each of the statutory plans through which the People sought relief are elements of the causes of action alleged. The People filed a petition for writ of mandamus which we now consider at the direction of our Supreme Court.

We hold that the penalties which the People seek are among the *remedies* available to them rather than *elements of the causes of action* which they allege in the several complaints, grant the People's petition and reverse the trial court's order. We therefore issue a writ of mandate, vacating the order denying the People's motion for summary judgment or summary adjudication and remand the matter to the trial court to fully consider the People's motion, including all evidence and objections presented, in a manner consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

*Complaints and causes of action*

The People's 27 civil actions against 87 defendants[1] seek permanent injunctions "to close down illegal medical marijuana shops and to dissuade potential entrepreneurs who might be contemplating opening similar businesses, as well as to deter property owners considering renting to marijuana establishments." The People's complaints contain many common claims. Against the owners and operators of medical marijuana dispensaries and the owners of the properties on which the dispensaries are located (the Property Owner Defendants), the People allege two causes of action: (1) for public nuisance (violations of Los Angeles Municipal Code (LAMC) sections 12.21 A.1(a) and 11.00(1) (collectively referred to as the LAMC violations))[2] and (2) for violation of the Narcotics Abatement Law (Health & Saf. Code, §§ 11570, et seq.) (referred to as the

---

[1] An additional 12 actions were filed against other defendants. This writ proceeding concerns the 83 different "individual" defendants named in the 27 complaints which are affected by the trial court's order now reviewed. The People explain that the larger number of defendants (87) results from some of the individuals being sued multiple times based on their various alleged activities.

[2] LAMC section 12.21 A.1(a) provides: "Permits and Licenses**.** No building or structure shall be erected, reconstructed, structurally altered, enlarged, moved, or maintained, nor shall any building, structure, or land be used or designed to be used for any use other than is permitted in the zone in which such building, structure, or land is located and then only after applying for and securing all permits and licenses required by all laws and ordinances."

LAMC section 11.00(l) provides in its first paragraph: "In addition to any other remedy or penalty provided by this Code, any violation of any provision of this Code is declared to be a public nuisance and may be abated by the City or by the City Attorney on behalf of the people of the State of California as a nuisance by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction. The City or the City Attorney, on behalf of the people of the State of California, may seek injunctive relief to enjoin violations of, or to compel compliance with, the provisions of this Code or seek any other relief or remedy available at law or equity."

3

NAL).[3]  Against the 67 defendants who are operators of medical marijuana dispensaries (the Dispensary Defendants) the People allege a third cause of action, for unfair competition in violation of Business and Professions Code section 17200 (referred to as section 17200 or as the UCL).[4]  The People sought permanent injunctions, abatement of the nuisances and civil penalties under the LAMC, the NAL and the UCL.  Preliminary injunctions were issued against defendants in eight cases on motion of the People.[5]

*Motion for summary judgment and adjudication*

The People filed a single motion for summary judgment or in the alternative, summary adjudication of issues against specified "Dispensary Defendants" and "Property Owner Defendants" (the Motion) on March 10, 2014.  The Motion sought "orders granting summary judgment, orders of abatement, permanent injunctions, and such other relief as permitted under [LAMC] sections 12.21 A.1(a) and 11.00(l) and the [NAL]" against the Property Owner Defendants, and similar relief against the Dispensary

---

[3]     Health and Safety Code section 11570 provides:  "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, precursor, or analog specified in this division, and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

[4]     Business and Professions Code section 17200 provides:  "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with § 17500) of Part 3 of Division 7 of the Business and Professions Code."

[5]     The People include in certain of their complaints an additional basis for liability, viz., that certain of these businesses are being operated within 600 feet of a school in violation of Health and Safety Code section 11362.768, subdivision (b).  The People do not seek a separate remedy based on this allegation; it serves as an additional basis for their allegations that these defendants violated the NAL and the UCL.

4

Defendants for violation of the LAMC and the UCL.[6]

*The trial court's rulings*

The hearing on the People's Motion was conducted on May 29, 2014. Prior to the hearing the trial court issued and made available its tentative ruling. The trial judge began the substantive portion of the hearing by referring to its tentative ruling and telling counsel, "I have gone off probably in a direction that catches you totally by surprise." He then explained: "It is a problem with the summary adjudication and the summary judgment statute that this issue of the penalty is what you might call a technical requirement for there to be a summary judgment or a summary adjudication of a cause of action. You are not alone in detecting this thin wire strung across the path at about ankle level on the way to summary judgment. . . . [¶] The problem is . . . that it is part of the cause of action and part of the judgment that the penalty, if it is discretionary, and all of these penalties are, to a degree, discretionary, that has got [*sic*] to be nailed down and [be] beyond factual disputes. [¶] Now, the criteria for a proper penalty is something that we have not even taken up in the papers here today because the people did not perceive that to be an essential element of their various motions, but sadly, I do believe it is."

After a brief discussion, the trial court adopted its tentative ruling, as follows:[7]

---

[6]     In support of the Motion, the People filed a memorandum of points and authorities; over 3,000 pages of evidentiary materials; 27 individual separate statements of undisputed facts (grouped by sets of defendants), and a request for judicial notice. Defendants filed numerous opposition memoranda (and joinders in memoranda filed by other defendants); declarations and evidentiary materials; requests for judicial notice; objections to the People's request for judicial notice; and objections to evidence offered by the People. The People filed objections to the defendants' requests for judicial notice, and a reply memorandum. The record in this court consists of 6,840 pages.

[7]     The reporter's transcript of the proceedings shows that there was no discussion of any of the evidence issues that had been raised by the parties in writing prior to the hearing; nor was there any argument on the motion other than the Deputy City Attorney

"'A plaintiff . . . has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on that cause of action.' (Code Civ. Proc., § 437c, subd. (p)(1).) A motion for summary judgment by a plaintiff must rely on evidence sufficient to '[establish] every element necessary to sustain a judgment in their favor[.]' (*Goldstein v. Hoffman* (1963) 213 Cal.App.2d 803, 881.) [¶] "A civil penalty is a form of relief on a cause of action under Business and Professions Code section 17200. (See *People v. Superior Court* (1973) 9 Cal.3d 283, 288 [*Jayhill*].) A court determining the appropriate penalty under the unfair competition law must 'consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liability and net worth.' (Bus. & Prof. Code, § 17206, subd. (b).) This is not 'post judgment relief,' as the People suggest. Rather, it is part of the cause of action. [¶] The same problem exists for the civil penalties under subdivision (l) of section 11.00 of the Los Angeles Municipal Code, and Health and Safety Code, section 11581, subdivision (b)(2). [¶] The People do not offer any evidence on the appropriate penalty against any Defendant. For that reason, the motions are deficient with respect to each Defendant."

Thereafter the court denied the People's motion in full.

---

stating that the City Attorney had "always done it this way" and "that this is a procedural issue in terms of . . . what the appropriate penalty is. So once a court determines whether summary adjudication is appropriate, then—and summary judgment, I might want to concede that, that perhaps summary judgment is not appropriate, but summary adjudication I think is appropriate with a separate hearing on the amount of penalties and relief. Because this is not damages. We all acknowledge that. This is a different animal altogether [*sic*]. [¶] So there is no clear-cut law on the procedure. I would think that the court would prefer to do it that way, decide the issue of liability first, and then have a separate hearing to determine the amount of civil penalties and costs and attorney fees. Attorney fees motions are always brought separately anyway after judgment."

*Writ proceedings*

The People filed and later amended their petition for writ of mandamus to direct the trial court to vacate its May 29, 2014 order denying the Motion and ordering it to either grant the Motion or consider it on its merits. Our Supreme Court granted the People's petition for review and transferred the matter back to this court with directions to vacate our order denying mandate and to issue an order to show cause why the relief sought in the petition should not be granted.[8] We did so, also staying further proceedings in the trial court pending determination of the merits of the amended petition.

CONTENTIONS

*The People's contentions*

The People seek review of the trial court's denials of their Motion, arguing the rulings were made "on the erroneous assumption that evidence relating to civil penalties must be presented as part of a motion for summary judgment/summary adjudication" and based on the trial court's legal determination that adjudication of penalties is an element of each of the causes of action alleged in the 27 complaints. The People contend that the trial court erred as a matter of law and that there is no issue of fact warranting denial of the Motion.

As the People express the issue in their petition for review, "This Petition presents the issue of whether summary judgment or summary adjudication is available in a case where a plaintiff is seeking an award of civil penalties and where there is no genuine issue of material fact as to liability."

---

[8] In the course of its review of the People's petition for hearing, the Supreme Court granted the People's request for judicial notice of a ruling by a different department of the Los Angeles Superior Court, in *People of the State of California v. Elad 26 Towers LLC, et al.* (Los Angeles Super. Court case No. BC514269, August 20, 2014). The People sought judicial notice of that ruling as "indicative of the differing standards being applied by the trial courts" in application of identical statutes.

7

*Contentions of the real parties in interest and the People's reply*

Returns were filed by four sets of real parties in interest: by Michael Braum, individually and as trustee of the Braum Family Trust (Braum); by Alan Edward Broder, individually and as the Trustee of the Broder Great Grandchildren's Trust (Broder); by Our Elco;[9] and by George Paulsin, individually and as Trustee of the Cates 1989 Trust (Paulsin).

As the People point out in their reply, because the returns were unverified and not in the form a demurrer, the factual contentions raised may not be considered. Instead, we will treat the returns only as memoranda discussing those arguments and authorities as are relevant. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 372, fn. 5; *Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287; California Rules of Court, rule 56(f).)

MERITS

*Standard of Review*

Review of a trial court's ruling on a motion for summary judgment or summary adjudication is typically de novo. (See *Centennial Ins. Co. v. United States Fire Ins. Co.,* (2001) 88 Cal.App.4th 105, 110-111, and cases cited [discussing application of abuse of discretion standard when reviewing determinations involving equitable relief].) Review of the rulings of the trial court here will be de novo because the trial court clearly ruled as a matter of law that the penalties sought by the People in each of the 27 substantially similar complaints were elements of each of the causes of action alleged.

We also address the circumstances that the trial court made no rulings on any of the evidentiary issues presented, whether on the objections filed by several defendants to the evidence offered by the People or with respect to the requests for judicial notice filed

---

[9] The return of Our Elco was filed as a "Request for Leave to File Letter Brief as Amicus." We treat it as a return by this party as Our Elco was a party to the proceedings below and it is properly considered to be a real party in interest in this proceeding rather than an amicus curiae.

8

by multiple parties, and that the People now ask that we both reverse the trial court's legal determination and grant their request for judgment or, in the alternative, for summary adjudication, on each cause of action.

The standard for appellate review of evidence objections made but not resolved in the trial court is problematic. *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, resolved certain aspects: written evidentiary objections made prior to the hearing on a motion are deemed made at the hearing on the motion (*id*. at pp. 526, 531-532; Code Civ. Proc., § 437c, subd. (b)(5); see *id*. subd. (d));[10] and rulings not made in the trial court are deemed overruled in the trial court's consideration of the motions and are preserved for appeal. (*Reid v. Google, Inc., supra,* 50 Cal.4th at pp. 532-535*; Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 890.) A corollary to this latter rule is that the appellate court assumes that the trial court considered the evidence notwithstanding the objectionable (but not excluded) evidence in ruling on the merits of the motion made under section 437c. (See *Reid v. Google, Inc., supra,* at p. 526*.)*

In this case, however, the hearing never included consideration of the evidence proffered or the objections to that evidence. We consider the impact of that omission on this appeal. In *Reid v. Google, Inc.*, *supra,* 50 Cal.4th 512, the Supreme Court noted that, at the request of a party (Google), the Court of Appeal considered the evidence objections that had been not ruled on by the trial court. (*Id*. at p. 535.)[11] There are considerable procedural difficulties in our taking a similar course. In the present case, neither the People's petition for writ of mandate nor their petition for review contains any significant discussion of the evidence issues which they would have us consider to resolve their motions; nor is there any written response to any of the evidence objections advanced

[10]    Further references to Code of Civil Procedure section 437c will omit reference to the name of the code.

[11]    Review of the evidence conducted by the Court of Appeal in that case is described by our Supreme Court as follows: "The Court of Appeal correctly found that the trial court erred in granting summary judgment because Reid's proffered admissible evidence presented triable issues of material fact." (*Reid v. Google, Inc., supra*, 50 Cal.4th at p. 516.)

9

below.  By granting the People's request that we not consider the factual contentions improperly presented in the defective returns filed by the several real parties in interest, we also remove from our consideration the section of the People's reply that addresses the evidentiary arguments advanced by those real parties in interest.

Also, the general rules discussed above will not fit the factual and procedural circumstances of this case.  It is clear from the record that the trial court here did not rule on the evidence issues presented to it because it considered the evidence irrelevant to the question of law it decided, viz., that  penalties were an element of each cause of action. We agree that that conclusion made the determination of the scores of evidence issues irrelevant to the particular ruling of the trial court—but they remain relevant under the statute and case law, which require that they be resolved.  Section 437c, subdivision (c) contains no exception to consideration of the evidence presented at the hearing on a motion brought under that section.

For these and additional reasons we discuss later in this opinion, we decline to take up what is traditionally the trial court's role:  to hear the parties present their arguments on admissibility of evidence proferred and then resolve the evidentiary issues presented.

*Summary of the complaints and details of the People's claims*

The 27 separate complaints filed by the People have common themes.  The "typical" complaint describes the People's authorization to "seek injunctive relief and civil penalties" under the LAMC, the NAL and the UCL, and then sets out allegations with respect to the particular Dispensary Defendants and Property Owner Defendants. Each complaint contains allegations concerning the three provisions of law which the People contend the named Dispensary Defendants and/or Property Owner Defendants have violated.  The first cause of action contains allegations of the dates from which the People allege that the named defendants have engaged in acts "not permitted in that zone and . . . in violation of LAMC section 12.21 A.1(a) . . . which constitutes a public nuisance under LAMC section 11.00(l)."  The second cause of action alleges that the

10

property described was and is being used "for the purposes of unlawfully selling, serving, storing, keeping, manufacturing or giving away controlled substances . . ." in violation of the NAL. The third cause of action alleges that the Dispensary Defendants have engaged in "unlawful and unfair competition within the meaning of and in violation of . . . section 17200, et seq., including but not limited to, one or more unlawful business acts or practices. Such unlawful business acts or practices include, but are not limited to: a. Using the land and building . . . for a medical marijuana use in violation of LAMC 12.21 A.1(a); [and] b. Illegally storing, selling, serving or giving away marijuana in violation of [the NAL] and [LAMC] section 12.21. A.1(a)."

The prayers for relief seek detailed and extensive terms of prohibitory injunctive relief (e.g., from operating, or in any way allowing, use of the property for any activity involving marijuana); mandatory injunctive relief (including but not limited to ordering the removal of signs or otherwise advertising the existence of a "marijuana establishment"); abatement of the "fixtures and moveable property" in accordance with Health and Safety Code section 11581; unspecified orders remedying the nuisance as permitted by Health and Safety Code section 11573.5; closure of the premises for one year; civil penalties of $2,500 per day under each of the LAMC and the UCL; a civil penalty of $25,000 under the Health and Safety Code; and law enforcement investigative costs, attorney fees and costs of suit.

*Ruling by the trial court*

We set out the trial court's ruling in detail above. In summary, the trial court held that penalties are an element of each of the causes of action alleged in each of the 27 similar complaints filed by the People. That ruling was premised on the view that proof of the amounts of penalties constituted essential elements of each of the People's causes of action. Further, it relied on *Jayhill, supra*, 9 Cal.3d 283, as the authority for its ruling. The People disagree with the legal conclusion reached and argue that they presented all proof necessary to establish the violations of the three laws and that "the Defendants

11

failed to refute the proof."[12]  As we have noted, the People's primary contention is that the trial court erred in its legal determination that proof sufficient to establish all aspects of the requests for penalties was an element of each of the causes of action alleged.

*Analysis*

We agree with the trial court's citation of the general rule that, by "[a] motion for summary judgment[,] the plaintiff has the burden to 'establish every element necessary to sustain a judgment in their favor[.]'" (*Goldstein v. Hoffman, supra,* 213 Cal.App.2d at p. 811.)  However, we hold that the trial court erred in applying this general principle and the principles of *Jayhill*, *supra*, 9 Cal.3d 283, in this case.

The first difficulty with the trial court's determination is that its decision is contradictory.  It is true, as the trial court states near the beginning of its ruling, that an award of civil penalties is a form of relief.  And it is correct that the factors listed in the trial court's ruling (taken from Bus. & Prof. Code, § 17206, subd. (b)) are among the factors properly considered by a trial court in determining the appropriate penalty amounts.[13]  The conclusion which the trial court reached, however, does not follow from

---

[12]     We construe this statement as an argument by the People that they presented to the trial court evidence meeting the statutory test that the People adduced facts sufficient to establish as true each element of each of their causes of action and that no defendant offered any evidence which raised a triable issue of fact with respect to any element of the People's case.  (§ 437c, subd. (c) [summary judgment].)  Because the trial court did not address whether the People had met their evidentiary burden under this statute (or the corollary burden under § 437c, subd. (f) [summary adjudication]), and did not consider any of the proffered evidence of the many defendants that may have created triable issues of fact that would have defeated the People's motion as to any particular defendant, we have an insufficient record to resolve the People's Motion on its merits.

[13]     The list of factors to be considered in assessing a penalty for violation of Business and Professions Code section 17200 is set out in Business and Professions Code section 17206, subdivision (b), which provides:  "The court shall impose a civil penalty for each violation of this chapter.  In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following:  the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of

12

the premise which it states. Thus, it does not follow from the trial court's recitation of the factors that may be considered in determining the amount of civil penalties to be assessed that the remedy of penalties is (or other remedies sought in this case are) therefore "part of the cause of action" as the trial court held.

*Section 437c does not bear the construction advanced by the trial court*

The trial court's determination that penalties are an element of the cause of action because they would have to be determined to be included in the judgment is inconsistent with a proper reading of section 437c. The trial court based its conclusion in part on its statement that penalties are "not 'post judgment relief,' as the People suggest.'" That conclusion is an incomplete statement of the adjudication process under section 437c which, if successful, ultimately leads to entry and filing of a judgment. As the People point out in support of their contention that it was appropriate for the trial court to rule on their motions and later hold a hearing on the propriety and amount of civil penalties, there is nothing in the text of section 437c that requires that judgment be entered immediately upon issuance of a ruling granting summary judgment. Thus, the People's request to determine issues relating to penalties once the Motion under section 437c was determined is not unreasonable so long as they are correct (as they are) that penalties are not an element of the several causes of action alleged, a matter discussed below.

The trial judge's contrary ruling included his expression of concern at the hearing that the case must be concluded fully by the resolution of the motion itself (other than any

_____

time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth."

The trial court also erred in its decision that the People have the burden to adduce proof of each element set out in Business and Professions Code section 17206, subdivision (b). The law is to the contrary. (*People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 728.)

The parties did not brief how the amounts of penalties under the UCL, the LAMC or the NAL are to be determined. It is sufficient for this proceeding to resolve the more fundamental issue of the proper elements of each of the causes of action.

13

determination of attorney fees and costs).  This concern is not supported by the text of the statute.

Section 437c clearly requires that judgment be entered at some point, but none of its subsections states expressly when that is to occur.  Subdivision (c) of section 437c provides:  "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

And subdivision (k) provides:  "Except when a separate judgment may properly be awarded in the action,[14] no final judgment may be entered on a motion for summary judgment prior to the termination of the action, but the final judgment shall, in addition to any matters determined in the action, award judgment as established by the summary proceeding herein provided for."

Indeed, the text of subdivision (k) resolves the trial court's concern regarding later proceedings, as it expressly permits later entry of the final judgment, viz., when the action "terminates."  Thus, the statute itself is not inconsistent with the People's theory, expressed in their memorandum in support of their motion below, that penalties may be established after they secure a favorable ruling on the Motion.

We understand the trial court's concern that granting summary judgment on the causes of action alleged (violation of the LAMC, of the NAL and of the UCL) is complex.  But we find nothing in the history or current text of section 437c that suggests that equitable remedies (e.g., issuance of a permanent injunction) must be determined at the hearing on a motion for summary judgment; such remedies are not either limited or

---

[14]    We suggest that this introductory clause refers to a circumstance in which a final judgment may be entered as to a party all of whose claims are fully resolved such that there would be no violation of the "one final judgment rule."  (This rule is discussed, for example, in *Justus v. Atchison* (1977) 19 Cal.3d 564, 568; overruled on other grounds in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159.)  That exception is not a command to accelerate entry of judgment to the very moment the trial court grants a motion for summary judgment.  Not infrequently there are other issues to be determined.  For example, if an accounting is ordered, the first judgment is seldom the final judgment.  (See, e.g., *Yeboah v. Progeny Ventures, Inc*. (2005) 128 Cal.App.4th 443, 448.)

foreclosed by a determination that all of the elements of a cause of action have been established and that the moving party is entitled to summary judgment.  Instead, section 437c must be considered together with other statutes and the common law equitable powers of the courts to fashion judgments appropriate to the relief determined in the particular case and at the appropriate time.

The People argued in the trial court that penalties could be determined in a 'post-summary judgment proceeding,' giving as examples the postjudgment hearings which are held on motions for attorney fees and on motions to tax costs.[15]  While we find those examples unpersuasive, a step by step procedure such as that which the People outline, is entirely feasible—in this case particularly so based on the large number of defendants who may be determined to be liable, as well as due to varying factual circumstances in each case and as to each of many sites.

No provision of section 437c contains an express statement regarding the content or timing for entry of the judgment obtained under that section and, as noted above, subdivision (k) indicates that the grant of a motion under this section is an important step, but not the only step, in the course of litigation which will conclude later with entry of the final judgment.  Notwithstanding the breadth of its coverage of other aspects of procedure, section 437c is silent on the exact form and text which "a judgment" otherwise determined to be appropriate is to take.  The section refers to the grant of "a judgment" without specifying its parameters, and wisely so given the great breadth of matters that can be determined by this abbreviated procedure.  Other provisions of the Code of Civil Procedure and of the Rules of Court address the issue of the form, and to some extent the terms, of the judgment eventually entered.

Among the aspects absent from section 437c is any mention of how a trial court determines the scope of any injunction to which a plaintiff  may be entitled on grant of its

---

[15]     The People's use of attorney fees and cost determinations as examples are readily distinguishable as each is specifically addressed by either or both of statute and the California Rules of Court.  (See, e.g., Code Civ. Proc., § 1021, Civ. Code, § 1717; and California Rules of Court, rule 3.1702 [attorney fees] and rule 3.1700 [costs].)

motion for summary judgment in an action seeking equitable relief. While it is easy to determine the substance and form of a judgment upon summary judgment in litigation on a promissory note, for example, the same cannot be said when the relief sought is equitable in nature.

A trial court's determination that the moving party has met the statutory test and that it is entitled to "judgment as a matter of law" in an action in which one of the remedies is an injunction invokes the equitable powers of the trial court. In such circumstances, the ruling that the moving party is entitled to a judgment may not end the matter.[16] The trial court must necessarily decide how it will exercise its equitable powers. In doing so, while the court properly looks to the evidence adduced at the hearing on the motion for summary judgment to aid it in its determination of terms proper for the exercise of its equitable powers in fashioning an injunction appropriate to the individual case, the terms of such an injunction may well include provisions based on the exercise of the sound discretion of the trial court in effectuating its equitable powers. Some of those provisions may not be within the four corners of the motion for summary judgment, a document framed by the moving party and not by the court. While a trial judge does not enjoy unbounded discretion in fashioning the terms of the permanent injunction in such a case, and may look to the successful party for a draft of its terms, the trial judge is not limited to the wording or even the scope of the document submitted by the moving party, as the submission by the moving party may not correctly or fully express the judgment of the trial judge on the appropriate terms of exercise of the trial court's equitable jurisdiction, having considered the full evidentiary record and the applicable law.

---

[16] Our discussion focuses on cases in which equitable relief is sought. We need not, and do not, consider the variation in terms of judgments issued after grants of summary judgment in cases in which other types of relief are requested. The variations are many. The critical point is that the legal conclusion that a party is entitled to "a judgment" is not the end of the matter: the precise terms of the judgment may depend on circumstances to be determined in addition to those adjudicated on the motion for summary judgment itself.

16

Determination of the appropriate scope of an injunction is sometimes apparent to the wise trial judge—and sometimes it may not be. Certainly in the latter circumstance, she or he may determine that all of the elements of a plaintiff's cause of action are established—and then hear from the parties as to the scope of the injunctive relief that is appropriate in the particular case. That hearing may involve arguments on the law, and it may include factual presentations on the feasibility of certain aspects of the injunction to be issued. Section 437c does not address the application of this power. The key point is that the grant of a motion for summary judgment in an action seeking equitable remedies may not (and does not necessarily) end with that ruling.

Ascertaining the appropriate amount of penalties to be assessed is another remedy to be determined by the trial court sitting in equity as to which evidence and argument will be required so that the trial court may properly exercise its discretion. (See, e.g., Bus. & Prof. Code, § 17206.)

We turn now to consider the other basis upon which the trial court determined that penalties are part of the cause of action, its erroneous conclusion that *Jayhill*, *supra*, 9 Cal.3d 283, compels that conclusion.

*Primary rights theory, Jayhill, and later cases*

Primary Rights Theory and the Meaning of the Term Cause of Action

On first look, the trial court's ruling that penalties are an element of each of the causes of action in the People's several complaints may appear plausible: one of the People's requests is that the trial court assess a penalty against each of the defendants for alleged violations of the LAMC, the NAL and the UCL. That penalties are part of the cause of action may be suggested by the title of the complaints filed by the People. Typical of these complaints is the title "Complaint for Abatement, Injunction, Equitable Relief and Civil Penalties." California Rules of Court, rule 2.111(6), requires that each complaint contain on its face a brief statement of "the character of the action or proceeding." (See *Sacramento & San Joaquin Drainage Dist. v. Superior Court* (1925) 196 Cal. 414, 421 [complaint entitled "Complaint to Quiet Title and for Injunction"]; and

17

*United Food & Commercial Workers Union v. Superior Court* (2000) 83 Cal.App.4th 566, 571, fn. 4 [complaint entitled "Verified Complaint for Temporary Restraining Order and Preliminary and Permanent Injunctions and Damages"].)

It does not follow from the requirement to state the "character of the action or proceeding" that compliance with this rule means that what is described on the title page of the complaint is a statement of elements of a cause of action. Instead, one must look to the allegations in the body of the complaint to determine whether a set of alleged facts constitutes a cause of action. In California, this determination is made by application of what is known as the "primary rights theory."

Thus:

"Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty devolving on the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. . . . Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action. . . . [T]he existence of a legal right in an abstract form is never alleged by the plaintiff; but, instead thereof, the facts from which that right arises are set forth, and the right itself is inferred therefrom. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong. (Pomeroy, Code Remedies (5th ed.), p. 528; see James 5th, §11.9; 1 Am.Jur.2d (2005 ed.), Actions §§ 1, 46; cf. Rest.2d Judgments, § 24, com. a, p.)" (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 34, p. 98.)

Our Supreme Court has discussed primary rights theory in numerous cases. For example, over one hundred years ago, in *Beronio v. Ventura Lumber Co*. (1900) 129 Cal. 232, 235, a case in which the plaintiff was seeking to both quiet title to real property and annul a sheriff's deed to the defendant under foreclosure of a mortgage made after the

18

recorded conveyance by the mortgagor by which plaintiff claimed title, the court addressed primary rights theory, holding that "the complaint [there at issue] presents only a single cause of action, viz., the enforcement of the plaintiff's right to the premises in question. . . . As a portion of the remedy for the enforcement of that right [plaintiff] seeks annulment of the sheriff's deed, but a plaintiff may frequently be entitled to several species of remedy for the enforcement of a single right. [Citations omitted.]" (*Id.* at pp. 235-236.)

That violation of the same primary right may allow for several remedies is illustrated by another early supreme court case, *Frost v. Witter* (1901) 132 Cal. 421. In *Frost*, our Supreme Court discussed Pomeroy's theory of primary rights in the context of the propriety of allowing an amendment to a complaint to assert an additional remedy. In allowing the addition of another potential remedy to the complaint, the court noted: "The 'cause of action' is therefore to be distinguished, also, from the '*remedy*,'—which is simply the means by which the obligation or the corresponding action is effectuated,— and also from the 'relief' sought. (Pomeroy on Pleading and Practice, § 453.) [¶] Applying these definitions to the case at bar, it is clear that the cause of action set up in the original and that set up in the amended complaint was simply the obligation sought to be enforced;—that is to say, the obligation to pay the money agreed to be paid, and that the only change that took place was in the remedy by which it was sought to enforce the obligation." (*Id.* at p. 426.)[17]

---

[17]     In other cases there may be a single primary right, the vindication of which is sought in different "counts." Indeed, the term "count" may refer to either a legal theory or a remedy that is intended to compensate the plaintiff for the violation of the primary right which is the subject of the litigation, e.g., damages in a negligence case. See, e.g., *Slater v. Blackwood* (1975) 15 Cal.3d 791, in which our Supreme Court explained: [¶] "Our consideration of plaintiff's argument involves a significant conceptual matter. It is true that plaintiff has asserted different legal theories in the instant case and in her 1970 complaint. However, the 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. (*Peiser v. Mettler* (1958) 50 Cal.2d 594, 605.) Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. 'Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the

Multiple remedies may be available to vindicate a single primary right.  In *Wulfjen v. Dolton* (1944) 24 Cal.2d 891, our Supreme Court disallowed a second action in which the plaintiff sought damages which plaintiff filed while there remained pending an earlier action in which the remedy sought was rescission.  The court reasoned that the plaintiff could have pleaded the alternative remedy of damages in the first action.  (*Id*. at pp. 895-896.)  And in *Crowley v. Katleman* (1994) 8 Cal.4th 666, in reliance on *Wulfjen*, our Supreme Court confirmed that multiple remedies can be available for alleged violations of a single primary right:  "It must therefore be distinguished from the *legal theory* on which liability for that injury is premised:  "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief."  (*Ibid.*)  The primary right must also be distinguished from the *remedy* sought:  "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."  (*Wulfjen v. Dolton*, *supra*, 24 Cal.2d 891, 895-896, italics deleted; see also, *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860, fn. 1 [discussing primary rights theory and citing *Big Boy Drilling Corp. v. Rankin* (1931) 213 Cal. 646 which, at

---

same right, even though he presents a different *legal ground* for relief.'  (3 Witkin, *supra*, Pleading, § 24, p. 1709; and see *Panos* v. *Great Western Packing Co., supra*, 21 Cal.2d at pp. 638-639; *Ford Motor Co.* v. *Superior Court* (1973) 35 Cal.App.3d 676, 679.)  We therefore cannot accept plaintiff's first contention.  [¶]  Plaintiff, however, points to certain language in *Brown v. Merlo, supra*, 8 Cal.3d 855 at pages 860, 863, in which we refer to the 'cause of action' for negligence and the 'cause of action' for violation of the former guest statute.  It is argued that by use of such language we have implicitly agreed that a case such as this one gives rise to multiple causes of action.  However, the phrase 'cause of action' is 'often used indiscriminately to mean what it says and to mean *counts* which state differently the same cause of action, . . .'  (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847; and see *Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.* (1970) 10 Cal.App.3d 206, 215.)  When read in context it is clear that our use of the term 'cause of action' in *Brown*, noted by plaintiff, refers to the 'counts' asserted by the plaintiff in her complaint."  (*Slater v. Blackwood, supra*, 15 Cal.3d at pp. 795-796.)

20

p. 649, distinguishes the concept of a "cause of action" from the potential of several "remedies" to vindicate a breach of the primary right or cause of action].)"

Thus, our Supreme Court has confirmed the distinction between primary rights and the remedies available to vindicate those rights. In *Jayhill, supra,* 9 Cal.3d 283, next discussed, our Supreme Court established that demands for penalties such as those sought by the People in this case, are remedies and not elements of causes of action to establish the violation of the primary right there alleged, for false advertising. We now turn to discuss *Jayhill* in depth.

### *People v. Superior Court* (*Jayhill*)

The trial court erroneously applied *Jayhill*, *supra*, 9 Cal.3d 283, to deny the People's Motion on the basis that penalties were an element of each cause of action. The trial court first cited *Jayhill* for the statement that, "A civil penalty is a form of relief on a cause of action under [] section 17500," but concluded the same paragraph with the ruling that penalties are "part of the cause of action." Our Supreme Court's decision in *Jayhill* rejects this very conclusion and holds that penalties are not part of the cause of action for violation of section 17500.

Although *Jayhill* was concerned with the proper scope of pleading causes of action under Business and Professions Code section 17500, which forbids false and deceptive advertising, the *Jayhill* court's reasoning and holding apply with equal logic and force to claims brought under the UCL. At the time *Jayhill* was decided what is now Business and Professions Code section 17200 (then Civ. Code, § 3369) did not have a related statute providing for assessment of civil penalties. As the Supreme Court noted in a footnote in *Jayhill*, the present section authorizing civil penalties for acts of unfair competition (Bus. & Prof. Code, § 17206; then Civ. Code, § 3370.1) had only just been enacted. (See, *Jayhill*, *supra*, 9 Cal.3d at p. 287, fn. 3.) The Supreme Court notes at several points in its opinion in *Jayhill* the close relationship of the false advertising (Bus. & Prof. Code, § 17500) and unfair competition (then Civ. Code, § 3369; now Bus. & Prof. Code, § 17200) statutes as well as that the penalty statute to accompany and enforce

21

what is now Business and Professions Code section 17206 was modeled on Business and Professions Code section 17536. This congruence of language and the legislative history of these statutes demonstrate that analysis of the *Jayhill* opinion is persuasive authority in reaching a similar determination, that penalties are not an element of the cause of action, under the UCL (or under the LAMC or NAL).[18]

In discussing the issue of the role of penalties in pleading a cause of action for false advertising under Business and Professions Code section 17500, our Supreme Court stated: "The[trial] court also ruled that 'each claim for penalty is a separate cause of action,' apparently on the theory that each violation of section 17500 constitutes a distinct cause of action which must be separately stated. (Code Civ. Proc., § 430, subd. 5.) We do not agree. The Attorney General has only one cause of action against a particular defendant for violating section 17500; for this he seeks several forms of relief, including the civil penalty of $2,500 set forth in section 17536. Since multiple victims are involved

---

[18] The legislative history of what is now Business and Professions Code section 17200 is discussed in *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997 (*Feitelberg*): "'The UCL evolved from a 1933 amendment to Civil Code section 3369.' (*Kraus, supra,* 23 Cal.4th at p. 129; see Civ. Code, former § 3369, as amended by Stats. 1933, ch. 953, § 1, p. 2482.) With respect to remedies, the 1933 amendment provided express authority for courts to enjoin acts of unfair competition, but it did not explicitly empower courts to order monetary relief. (*Kraus, supra*, at pp. 129; *Korea Supply, supra,* 29 Cal.4th at p. 1146.) Forty years later, in the *Jayhill Corp.* case, the California Supreme Court recognized the courts' inherent equitable power to order restitution under the UCL, notwithstanding the absence of explicit statutory authorization to do so. (*Korea Supply, supra,* 29 Cal.4th at p. 1147, discussing *People v. Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283, 286.) 'Three years after *Jayhill Corp.,* express authority to order restitution was added to Civil Code section 3369, the predecessor to section 17203. (Stats. 1976, ch. 1005, § 1, p. 2378.)' (*Korea Supply, supra*, at p. 1147.) But 'this revision of the act was intended to *codify,* not change, the remedies available to a trial court under the UCL.' (*Ibid.*) 'The following year, the Legislature removed the unfair competition law from Civil Code section 3369 and placed it in the Business and Professions Code (Stats. 1977, ch. 299, §§ 1, 2, pp. 1202–1203).' (*Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 664.)'" (*Feitelberg, supra,* 134 Cal.App.4th at p. 1010.)

We omit discussion of more recent history of the UCL, in particular the passage of Proposition 64 in November 2004, as it is not necessary to the issues presented in this case.

he prays for a penalty for each violation, but this does not elevate each violation to a separate cause of action. Defendants, moreover, would derive no advantage from the bare repetition of the alleged misrepresentations in separate paragraphs representing different customers solicited. We hold that the Attorney General has only one cause of action against a defendant for violating section 17500, but that the amount of civil penalties which may be imposed under section 17536 is dependent upon the number of 'violations' committed by a defendant." (*Jayhill, supra*, 9 Cal.3d at p. 288.)

The Supreme Court made clear that the cause of action is for violation of the particular statute, there Business and Professions Code section 17500, and that *among the remedies* is determination of civil penalties under Business and Professions Code section 17536. The court did so notwithstanding that Business and Professions Code section 17536, read as follows: "Any person who violates any provision of this chapter . . . shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, *which shall be assessed in a civil action* brought in the name of [specified public officials]. . . ." (Stats. 1972, ch. 711, § 2, p. 1299; emphasis added.)[19] The italicized language could have supported a holding that penalties are an element of the cause of action, but that argument is foreclosed by the Supreme Court's holding in *Jayhill* that the section prescribes a *remedy* of a penalty, and the *cause of action* is that provided for by section 17500. Neither the trial court nor any of the real parties in interest suggest that there is any case that has altered or overturned this holding of *Jayhill*. The ruling below and the argument of real parties in interest that *Jayhill* holds that proof of penalties is an element of the cause of action, there under Business and Professions Code section 17500, here under Business and Professions Code section 17200, is simply wrong.

In the present case we apply the principles established in *Jayhill* to the People's complaints under the corollary statute defining the offense, then Civil Code section 3369,

---

[19] In the years since the *Jayhill* decision the statute has been amended, but none of those amendments altered this portion of the statute.

now Business and Professions Code section 17200, and its corresponding penalty statute, Business and Professions Code section 17206.[20] The *Jayhill* court makes specific reference to the enactment of the predecessor to section 17206. In the course of its opinion in that case, the Supreme Court noted that, while the case was pending, the Legislature enacted a penalty section, Civil Code section 3370.1, which it described in the following terms: "The provisions of the new statute [Civil Code section 3370.1 (now Bus. & Prof. Code, § 17206)] are essentially identical to section 17536." (*Jayhill, supra,* 9 Cal.3d at p. 287.)

For the same reason that the penalties provided for in Business and Professions Code section 17536 were not elements of the cause of action for false and misleading advertising under Business and Professions Code section 17500, the penalties provided

---

[20] Business and Professions Code section 17206 provides in pertinent part as follows: "(a) Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city having a population in excess of 750,000, by any city attorney of any city and county, or, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, in any court of competent jurisdiction. [¶] (b) The court shall impose a civil penalty for each violation of this chapter. In assessing the amount of the civil penalty, the court shall consider any one or more of the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth."

On its enactment as 1972 Statutes, chapter 1084, section 2, Civil Code section 3370.1 provided: "Any person who violates any provision of this chapter shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the state of California. . . ."

Sections 3369 and 3370.1 were reenacted as sections 17200 and 17206, respectively in 1977 by Statutes 1977, chapter 299, sections 1, 2, pages 599-600; see *Feitbelberg, supra,* 134 Cal.App.4th 997.

for under Business and Professions Code section 17206 are not elements of the cause of action for unfair competition under Business and Professions Code section 17200.

Just as *Jayhill* holds that the Attorney General has (the People have) only one cause of action against a defendant for violating section 17500 and that civil penalties are among the remedies which may be imposed, the same principles compel similar holdings for the offenses proscribed by the LAMC and NAL.

Our holding is consistent with principles of primary rights theory discussed above. The primary rights in this case are rights created by the UCL, LAMC section 12.21 A 1(a) and the NAL. Those sections define the elements of the causes of action; of the public's rights to be free from such conduct. The related penalty sections (Bus. & Prof. Code, § 17206, LAMC §11.00(l) and Health & Saf. Code, § 11581, subd. (b)(2)) establish remedies available in the event violations of the legislatively promulgated primary rights are established.

The trial court erred in concluding that penalties are an element of the causes of action here alleged, whether under the UCL or the LAMC or the NAL.

*Application of Jayhill's primary rights theory to the People's causes of action for violation of the LAMC and the NAL*

In its written ruling the trial court disposed of the causes of action under the NAL and the LAMC in a single sentence placed immediately after it concluded that *Jayhill* requires proof of penalties as an element to be established on motion for summary judgment or summary adjudication of a claim under the UCL. In disposing of these claims, the trial court stated only: "The same problem exists for civil penalties under subdivision (l) of section 11.00 of the [LAMC], and [Health & Saf. Code] section 11581, subdivision (b)(2)."

Neither ruling is correct. These rulings are clearly premised on the trial court's incorrect understanding of *Jayhill*, as discussed above. In addition, its argument that penalties are elements of the proof of violation of these causes of action is even less compelling than in *Jayhill* as neither of these sections contains the language discussed

25

above, that the penalties "shall be assessed and recovered in a civil action brought in the name of the people of the State of California. . . ."

Textually, Health and Safety Code section 11581, subdivision (b)(2) is clearly a 'penalties as a remedy' statute. Thus, it states: "In addition, the court may assess a civil penalty not to exceed twenty-five thousand dollars ($25,000) against any or all of the defendants, based upon the severity of the nuisance and its duration." Not found in this text is the language present in section 17206 that the penalties "shall be assessed and recovered in a civil action brought in the name of the people of the State of California. . . ."

LAMC section11.00(l) is equally a 'penalties as a remedy' law as it provides in the second paragraph of this section: "Violations of this Code are deemed continuing violations and each day that a violation continues is deemed to be a new and separate offense and subject to a maximum civil penalty of $2,500 for each and every offense."

There is thus no support for the ruling below that these laws require that penalties be established as elements of their respective causes of action.


*Penalties are distinct from damages*

The People point out that cases in which monetary damages are elements of a cause of action are distinguishable from cases in which one of the potential remedies is the award of penalties to a public agency. The two monetary awards serve different purposes and this, they argue, helps in understanding why the penalties the People seek are not elements of any of their causes of action.

The example the People give is a cause of action for breach of contract, in which damages are among the elements of proof of the "offense" (of breach of contract), along with plaintiff's performance or excuse, and the defendant's breach (and the resulting damage to the plaintiff). (*Careau & Co. v. Security Pacific Business Credit, Inc*. (1990) 222 Cal.App.3d 1371, 1388.) The matter is well established. (See, e.g., *Cutting Fruit Packing Co. v. Canty* (1904) 141 Cal. 692, 695; *Paramount Petroleum Corp. v. Superior*

26

*Court* (2014) 227 Cal.App.4th 226, 241; and cases collected at 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 515, p. 648.)

By contrast, they argue, *Jayhill* established that civil penalties are not an element of the cause of action under the UCL.  In light of *Jayhill*, we conclude that the trial court did err in holding that the penalties sought here are elements of the causes of action alleged, whether under the UCL, the LAMC or the NAL.

*Determination of the amount of civil penalties*

In their reply, the People ask that we "clarify the procedure to be used to determine civil penalties in a summary judgment/adjudication motion."

We comment only briefly for two reasons.  First, raising arguments for the first time in a reply brief is unfair to the other parties, who lack an opportunity to respond. (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1296.) Second, our role is to review for abuse of discretion matters such as the terms of injunctions and abatement orders, as well as the amounts of penalties as they are decided by trial courts rather than to determine these matters in the first instance.  Additionally, our setting bright line rules is fraught with the potential for exceptions to those same rules and may have an adverse effect on the exercise of our traditional appellate role as well as the role of the trial courts.  The People may canvas the appellate cases for guidance and commit the determination of the appropriate procedure for assessing penalties in the particular case to the prudent trial judge in the first instance.

*Other contentions of the real parties in interest*

Real parties in interest raise several contentions in their returns, but in many instances do not provide either cogent argument or cite any authority in support of their claims.  We decline to consider arguments not supported by adequate legal authority or which lack citation to the extensive record in this proceeding.  (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [arguments not properly presented are deemed forfeit]; *Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 294

27

[same]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 76 [appellate procedural requirements must be more strictly enforced as the size of the record grows].)

Braum and Broder contend they are entitled to jury trials,  However, as the People seek relief which is equitable in nature, the claim is without merit.  (See, e.g., *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283 [no right to jury trial existed at common law in suit to abate nuisance]; *People ex rel. Sorenson v. Randolph* (1979) 99 Cal.App.3d 183, 188-189 [same]; *People v. Witzerman* (1972) 29 Cal.App.3d 169, 177 [no right to jury trial in action under Bus. & Prof. Code § 17500 and in which a remedy is penalties under § 17536]; see generally *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284 [the gist of an action under the UCL is equitable (for which a jury was not available at common law at the time of statehood)].)

The potential award of substantial civil penalties does not transform the People's actions into cases seeking punitive or excessive damages.  (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728; *People v. First Federal Credit Corp., supra,* 104 Cal.App.4th 721, 728; see also *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, citing *Hale v. Morgan* (1978) 22 Cal.3d 388, 404 [assessments that are both in proportion to the misconduct and necessary to achieve the penalty's deterrent purposes are not constitutionally excessive].)

Braum's contention that he is being prosecuted both civilly and criminally is factually false; accordingly, we disregard it.  (See *Sumner Hill HOA v. Rio Mesa Holdings, LLC* (2012 ) 205 Cal.App.4th 999, 1037.)  Braum's argument that the People may have sought a stipulation to proceed under Code of Civil Procedure section 437c, subdivision (s) is in error as the People were not seeking such a limited disposition.[21]

Paulsin's claim that the action is moot because he is no longer leasing to a medical marijuana dispensary is without merit.  While voluntary cessation of conduct may be a factor in a court's exercise of its equitable jurisdiction to issue an

---

[21]     Section 437c, subdivision (s)(1) permits a moving party, upon stipulation of all parties, to seek a determination of legal issues that do not completely dispose of a cause of action.  Succinctly stated, that is not what the People seek in their motions.

28

injunction, it is not determinative; the trial court must also decide if an injunction affecting future conduct should be a part of the relief it grants.  (See, e.g., *United States v. W.T. Grant Co.* (1953) 345 U.S. 629, 638; *Wilson v. Los Angeles County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453.)  Paulsin's claim that he lacked knowledge that there was a marijuana facility on his property lacks merit as violation of LAMC section 12.21 A.1(a) is a strict liability offense.  (See *People v. Vogel* (1956) 46 Cal.2d 798, 801; *People v. Bachrach* (1980) 114 Cal.App.3d Supp. 8, 11.)  Paulsin's claim of lack of notice of the potential terms of injunctive relief or other remedies to be determined against it is also lacking in merit.  The motion is not required to go into the extensive detail which Paulsin demands.  (See, e.g., *Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4th 1472, 1478.)  Similarly, Our Elco's claim that its lack of knowledge is a defense is contrary to the holding of *Lew v. Superior Court* (1993) 20 Cal.App.4th 866, 873.

*Resolution of the Motion*

This case is before us because, in denying the People's motion for summary judgment or alternatively for summary adjudication, the trial judge ruled on grounds not raised by any party, and on a basis which he erroneously considered to fully resolve the motion and to not require consideration of any of the 27 separate statements filed by the People, of any of the corollary responsive separate statements filed by the defendants, of the scores of declarations filed by the parties, of the written (and yet to be made oral) evidentiary objections thereto,[22] of the several requests for judicial notice, or analysis of

---

[22]    Section 437c, subdivision (b)(5) provides:  "Evidentiary objections not made at the hearing shall be deemed waived."  It will be appropriate to entertain such objections at the hearing of the People's motions.  While rule 3.1354 of the California Rules of Court sets out a format and timing for filing of written evidence objections in advance of the hearing on a motion for summary judgment or adjudication, this statute expressly permits the making of evidence objections at the hearing.  (See *Reid v. Google, Inc., supra,* 50 Cal.4th at pp. 531-532.)

how particular segments of this substantial body of evidence applies to the 87 individual defendants.

Although the People ask us to rule on their motion, we have noted above certain difficulties in doing so, starting with the circumstance that they do not themselves adequately brief the issues left unresolved below, such as their response to the many objections filed prior to the hearing on their motion but never discussed on the record.

The procedure at a hearing on a motion for summary judgment is outlined in *Reid v. Google, Inc., supra,* 50 Cal.4th 512*,* in the following terms:

"At the summary judgment hearing, the parties have the opportunity to persuade the trial court and respond to its inquiries. (*Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 260.) At that hearing, the court considers the motion, any opposition to the motion, any reply, and all supporting papers submitted before the hearing, as well as arguments and evidentiary objections made at the hearing. (See § 437c, subds. (a), (b)(1)-(4); Cal. Rules of Court, rules 3.1352 and 3.1354(a).) Therefore, written evidentiary objections made *before* the hearing, as well as oral objections made at the hearing are deemed made "at the hearing" under section 437c, subdivisions (b)(5) and (d), so that either method of objection avoids waiver. The trial court must rule expressly on those objections. (See *Vineyard Springs Estates v. Superior Court* [2004] 120 Cal.App.4th at pp. 642-643 [trial courts have a duty to rule on evidentiary objections presented in proper form].) If the trial court fails to rule, the objections are preserved on appeal." (*Reid v. Google, Inc., supra,* 50 Cal.4th at pp. 530-531 [fns. omitted] (emphasis in original).)

Were we to grant the People's request that we undertake to resolve the Motion, we would deprive the trial court of its opportunity (and obligation) to address in the first instance the several matters described above, rule on the merits of the evidentiary claims, evaluate all of the admitted evidence in the manner appropriate to the Motion, and to

30

either grant the Motion or deny it, and in either event to make the written record required by Code of Civil Procedure section 437c, subdivision (g).[23]

There is a further set of reasons why we decline the People's request. The People seek injunctive relief, abatement of nuisances and civil penalties. Properly considering and resolving the terms of each injunction and abatement order that may be issued in this case will depend in part on the proof adduced with respect to the circumstances and conduct of each defendant or group of defendants over and above that necessary to establish the right to an order granting either a motion for summary judgment or summary adjudication.

The judicial officer who makes the evidentiary determinations at the hearing of the People's motion will have had the opportunity to consider the entire evidentiary record and to hear argument on its significance. The trial judge may need to hear additional evidence that, while not relevant to proof of the elements of the offenses, is relevant to the proper exercise of her or his equitable powers in fashioning terms of injunctions and abatement orders, as well as in assessing appropriate amounts of civil penalties. The evidence heard on the motions may be complemented by evidence later adduced to resolve these issues. If we were to determine the motions, we nevertheless would return the matter to the trial court to engage the parties on these important "post summary judgment/adjudication" issues. That judge would need to review the evidence we would have determined in the proper exercise of his or her discretion as to these matters.

---

[23]     Section 437c, subdivision (g) provides: "Upon the denial of a motion for summary judgment, on the ground that there is a triable issue as to one or more material facts, the court shall, by written or oral order, specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy. This determination shall specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists. Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists. The court shall also state its reasons for any other determination. The court shall record its determination by court reporter or written order."

31

While the People's request may be understandable, it is not efficient and intrudes on the normal judicial process, by which the *trial court* adjudicates motions such as those at issue here, and also resolves the issues of the appropriate scope of injunctions and abatement orders which an *appellate court* may later review according to the applicable standard. Similarly, we would truncate the exercise of discretion by the trial court in the first instance as to the appropriate amount of civil penalties, if any, to be assessed in these cases. Neither is an appropriate exercise of our authority on the facts and circumstances of this case. We therefore decline the People's invitation.

## DISPOSITION

The petition for writ of mandate is granted and our order to show cause is discharged.

Let a peremptory writ of mandate issue directing respondent court (a) to vacate its order denying summary judgment and summary adjudication and (b) to conduct further proceedings consistent with this opinion, including ruling on the motions for summary judgment and adjudication and, in doing so, ruling on the evidence objections made heretofore and any which may be made on the hearing of these motions. If the trial judge determines that all or any part of these motions is to be granted, he or she will then proceed after further presentation and hearing as may be appropriate, to determine the terms of any injunctive relief and abatement orders to which he or she determines the People are entitled, and the amounts of any penalties to be assessed against one or more of the several defendants. Thereafter, attorney fees and costs would be determined

according to statute and the California Rules of Court.

The order staying proceedings in the trial court will terminate upon issuance of the remittitur.

The People are awarded their costs in this original proceeding.

[CERTIFIED FOR PUBLICATION]


GOODMAN, J.[*]

I concur:


TURNER, P. J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The People v. Superior Court of Los Angeles County et al.
B257222

KRIEGLER, J., Concurring

I concur in the result.  The trial court, on its own motion, interjected and then misinterpreted the decision in *People v. Superior Court* (1973) 9 Cal.3d 283 (*Jayhill*) during the hearing on the People's motion for summary judgment.  In my view, the writ should issue on the People's petition because *Jayhill* supports, rather than defeats, the position asserted by the People.  I concur with the majority opinion's discussion under the subheading  "*People v. Superior Court (Jayhill).*"  No additional legal analysis is required to resolve the petition.


KRIEGLER, J.

1